UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
DARREN DIONE AQUINO,

                         Plaintiff,

         -against-                              MEMORANDUM & ORDER
                                                16-CV-0146(JS)(GRB)
SAG AFTRA, the Screen Actors
Guild-American Federation of Television
and Radio Artist, and all its Affiliates
& Associates, ADAM MOORE, SAG AFTRA
Diversity in his official capacity,
THE SAG AWARDS, JANE DOE AND JOHN DOE,
Entertainment Union, Casting Agents,
Affiliates and Associates, and
JEN COYNE-HOERLE, Awards Coordinator
SAG AWARDS in her official capacity,

                         Defendants.
----------------------------------------x
APPEARANCES
For Plaintiff:            Darren Dione Aquino, pro se
                          574 Junard Blvd.
                          West Hempstead, NY 11552

For Defendants:           Peter D. DeChiara, Esq.
                          Kate Montgomery Swearengen, Esq.
                          Cohen, Weiss and Simon
                          330 West 42nd Street, 25th Floor
                          New York, NY 10036


SEYBERT, District Judge:

         Plaintiff Darren Dione Aquino ("Plaintiff") commenced

this action asserting claims under the Americans with Disabilities

Act ("ADA"), 42 U.S.C. §§ 12111 et. seq. Currently pending before

the Court are: (1) defendants SAG-AFTRA ("SAG"), the SAG Awards,

Adam Moore ("Moore"), and Jen Coyne-Hoerle's ("Coyne-Hoerle" and,

collectively, "Defendants") motion to dismiss the Amended

Complaint, (Docket Entry 17), and (2) Defendants' motion to strike, (Docket Entry 22).  For the following reasons, Defendants' motions are GRANTED.

BACKGROUND

A.    Factual Background[1]

        Plaintiff has been diagnosed with processing dyslexia, and suffers from a severe limp due to poliomyelitis, a deformed right knee, club left foot, scoliosis, asthma, a partially occluded coronary artery, angina, and osteoarthritis.  (Am. Compl., Docket Entry 6, at 5.)  In 2000, Plaintiff joined SAG, an actors and entertainers union that seeks to "provid[e] competitive wages and safe, excellent working conditions for [its] members."  (Am. Compl. ¶¶ 4, 7.)  Plaintiff is currently a SAG member.  (Am. Compl. ¶ 8.)

        In 2000, Plaintiff appeared in television programs and films.  (Am. Compl. ¶ 9.)  Plaintiff's casting agent, Grant Wilfley Casting, Inc. ("Grant Wilfley"), assigned him directly to television and film projects.  (Am. Compl. ¶ 10.)  Plaintiff alleges that "[s]ome of the [job] sites were [i]naccessible."  (Am. Compl. ¶ 12.)  However, Plaintiff obtained "consistent work as a background actor" and worked on the same television show for three seasons.  (Am. Compl. ¶ 21.)  Plaintiff was the only disabled actor

_____

[1] The following facts are taken from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.  All internal quotation marks and citations are omitted.

on set and alleges that "SAG does not take any steps to enforce nor include their disabled Actor population when a call or opportunity arises for a background artist 'non-descript' person." (Am. Compl. ¶ 17.)

A lottery is drawn each year to determine which actors will attend the annual SAG AFTRA awards (the "SAG Awards"). (Am. Compl. ¶ 28.) In 2010, Plaintiff won the lottery and attended the SAG Awards. (Am. Compl. ¶ 28.) However, Plaintiff was the only disabled attendee "on the floor" and was seated at the only table with three seats. (Am. Compl. ¶ 28.) Plaintiff avers that the lottery, which is conducted by internet registration, is unfair because it fails to consider potential participants who are blind or have no arms. (Am. Compl. ¶ 29.) Plaintiff asserts that phone lines should be set up for disabled actors and there should be a separate lottery for disabled actors. (Am. Compl. ¶ 29.) Plaintiff sought to discuss his thoughts on this issue with Coyne-Hoerle, the coordinator of the SAG Awards, but "no discussions occurred." (Am. Compl. ¶ 29.) Subsequently, Plaintiff spoke to Coyne-Hoerle about a separate lottery for disabled actors and she stated that "if she had to accommodate and start a separate lottery for disabled actors that she would cancel the lottery and stop the Awards all together." (Am. Compl. ¶ 30.)

Plaintiff also spoke with Nicole Nakagawa, SAG's Executive Counsel, "regarding the unequal treatment of disabled

actors during the lottery drawing and the lack of recognition of the population and that strategies and programs must be put in place to accommodate." (Am. Compl. ¶ 31.) However, Plaintiff's concerns were not resolved. (Am. Compl. ¶ 31.) Plaintiff alleges that as a result of SAG's actions, he will "continue to suffer financial hardship." (Am. Compl. ¶ 34.) Plaintiff notes that at the SAG Awards, "there is no mention made regarding the recognition for the disabled, but they do for ethnicities, races, [but] none for disabled." (Am. Compl. ¶ 35.)

At an unspecified time, Plaintiff assisted disabled actors with casting by "bypassing the casting agent since they weren't sending any casting calls to [his] disabled colleagues[.]" (Am. Compl. ¶ 36.) As a result, Grant Wilfley ceased contacting Plaintiff. (Am. Compl. ¶ 36.) Plaintiff's colleagues at Law and Order, a television program that he had worked on, advised that they were told Plaintiff "was on other jobs." (Am. Compl. ¶ 36.) Plaintiff alleges that he "has been unable to work for the past 6 years." (Am. Compl. at 22.)

On January 8, 2016, Plaintiff spoke with "SAG AFTRA membership" and was advised that they do not possess a list of disabled members. (Am. Compl. ¶ 37.) Plaintiff alleges that SAG cannot "protect and provide equal access" if they do not know the number of their disabled members. (Am. Compl. ¶ 37.)

B.    Procedural History

On January 8, 2016, Plaintiff commenced this action and filed a motion to proceed in forma pauperis. (See Compl.) On January 13, 2016, Plaintiff filed his Amended Complaint, asserting claims under 42 U.S.C. Section 1983 and ADA "Title II and III," and requesting both injunctive relief and monetary damages. (See Am. Compl. at 1, 17-23.) On January 25, 2016, Plaintiff was granted leave to proceed in forma pauperis; however, his Section 1983 claim was sua sponte dismissed. (Docket Entry 8, at 7.)

On March 11, 2016, Defendants filed their motion to dismiss, seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to claims against all Defendants and Rule 12(b)(2) with respect to claims against Coyne-Hoerle. (Defs.' Mot.; Defs.' Br., Docket Entry 18, at 11.) On April 5, 2016, Plaintiff filed a sur-reply memorandum responding to Defendants' reply (the "Sur-Reply"). (Pl.'s Sur-Reply, Docket Entry 21.) On April 6, 2016, Defendants moved to strike Plaintiff's Sur-Reply (the "Motion to Strike"). (Defs.' Mot. to Strike, Docket Entry 22.)

DISCUSSION

I.    Motion to Strike

Defendants argue that the Court should decline to consider Plaintiff's Sur-Reply, as it was submitted after the completion of briefing on Defendants' Motion to Dismiss. (Defs.'

Mot. to Strike at 1.)  Plaintiff did not request leave to file the
Sur-Reply and the Court did not otherwise grant permission to
submit additional briefing.  Accordingly, Defendants' motion to
strike is GRANTED and Plaintiff's Sur-Reply is STRICKEN.

II.  Standing

        Defendants argue that Plaintiff's allegations with
respect to the SAG Awards fail to plausibly plead a Title III claim
as Plaintiff "nowhere alleges facts showing that he was ever denied
'a full and equal opportunity to enjoy the services [that the]
defendants provide.'"  (Defs.' Br. at 10 (quoting 42 U.S.C.
§ 12182(a); alteration and emphasis in original).)  While
Defendants only moved to dismiss the Amended Complaint pursuant to
Rules 12(b)(2) and (b)(6), the Court will sua sponte address the
issue of standing.  See Cent. States Se. and Sw. Areas Health and
Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181,
198 (2d Cir. 2005) ("[b]ecause the standing issue goes to this
Court's subject matter jurisdiction, it can be raised sua sponte").

        To establish standing pursuant to Article III of the
Constitution, the plaintiff must possess: "'(1) injury in fact,
which must be (a) concrete and particularized, and (b) actual or
imminent; (2) a causal connection between the injury and the
defendant's conduct; and (3) the injury must be likely to be
redressed by a favorable decision.'"  Grella v. Avis Budget Grp.,
Inc., No. 14-CV-8273, 2016 WL 638748, at *4 (S.D.N.Y. Feb. 11,

2016) (quoting <u>Kreisler v. Second Ave. Diner Corp.</u>, 731 F.3d 184, 187 (2d Cir. 2013)).  While Title III provides a private right of action, it "only authorizes injunctive relief, not damages." <u>Grella</u>, 2016 WL 638748, at *4.  Thus, a Title III plaintiff seeking injunctive relief must also demonstrate that "the identified injury in fact presents a 'real and immediate threat of future injury,' often termed 'a likelihood of future harm.'"  <u>Harty v. Spring Valley Marketplace LLC</u>, No. 15-CV-8190, 2017 WL 108062, at *6 (S.D.N.Y. Jan. 9, 2017) (quoting <u>Shain v. Ellison</u>, 356 F.3d 211, 215-16 (2d Cir. 2004)).  <u>See</u> <u>also</u> <u>Perdum v. Forest City Ratner Companies</u>, 174 F. Supp. 3d 706, 714-15 (E.D.N.Y. 2016) <u>aff'd</u>, --- F. App'x ----, 2017 WL 537056 (2d Cir. 2017) ("[w]hat constitutes an injury in fact under the ADA is that the plaintiff has personally encounter[ed] the barrier to access complained of, or [ ] has actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier") (internal quotation marks and citation omitted; second and third alterations in original).

The Amended Complaint alleges that the SAG Awards lottery is unfair to disabled actors, particularly blind actors or actors without arms who could potentially encounter difficulties completing the online registration.  (Am. Compl. ¶ 29.)  Plaintiff also alleges that he complained to Coyne-Hoerle about the absence of a separate lottery for disabled actors.  (Am. Compl. ¶ 30.)

However, Plaintiff does not allege that he is blind or unable to use his arms. Moreover, Plaintiff was unequivocally able to successfully register for the lottery. Thus, he has not alleged an injury based on the lack of a separate SAG Awards lottery system for disabled actors.

Plaintiff has also failed to allege an injury based on his placement at the only three-person table on the floor of the SAG Awards. (See Am. Compl. ¶ 28 ("[w]e were table 49A, the only table with 3 seats, oblong like the others but slanted to the side, we were the token 'disabled' table").) While Plaintiff argues that his table was "toward the back of the hall" and the only other disabled individual on the floor was a gentleman in a wheelchair, (Pl.'s Opp. Br., Docket Entry 19, at 10), he concedes that he was seated at a table on the floor, (Am. Compl. ¶ 28 ("[o]nce at the site, however, I noticed I was the only disabled individual on the floor")). In the absence of any allegations that Plaintiff's seating at a three person table, rather than a larger table, constituted a "barrier to access," see Perdum, 174 F. Supp. 3d at 714–15, Plaintiff has failed to plausibly plead an actual injury. Similarly, Plaintiff has failed to allege an actual injury based on the SAG Awards' failure to recognize the achievements of disabled actors. (Am. Compl. ¶ 35.)

Additionally, the Court finds that Plaintiff lacks standing to assert an ADA claim based on the inaccessibility of

job sites.  (Am. Compl. ¶ 12 ("[s]ome of the sites were [i]naccessible.  This limited the access for the disabled SAG member.  This practice is not fair nor is it equal to the disable[d] union actor").)  Plaintiff has not alleged that he was unable to access any job sites.  Moreover, the notion that Plaintiff encountered inaccessible television and film production sites is belied by his allegation that he acted on several television shows and movies and "consistent[ly]" worked on the same television show for three consecutive seasons.  (Am. Compl. ¶¶ 9, 21.)

Accordingly, Plaintiff lacks standing to assert a Title III claim regarding the SAG Awards lottery system, his seating at the 2010 SAG Awards, the lack of recognition for disabled actors at the SAG Awards, and the inaccessibility of job sites, and his ADA Title III claims based on those allegations are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016) ("where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice.  Such a dismissal is one for lack of subject matter jurisdiction").

Plaintiff's allegations against Coyne-Hoerle--who is listed in the caption as "[a]wards coordinator SAG Awards"--solely relate to the lack of a separate SAG Awards lottery for disabled actors.  (Am. Compl. ¶ 29 (alleging that Plaintiff sent an email

to Coyne-Hoerle "discuss [his] thoughts" regarding the lottery); ¶ 30 (alleging that he spoke with Coyne-Hoerle about a separate lottery and she stated that "if she had to accommodate and start a separate lottery for disabled actors that she would cancel the lottery and stop the Awards all together").)  In light of the Court's determination that Plaintiff lacks standing to assert a Title III claim regarding the SAG Awards lottery, the Court need not determine whether it possesses personal jurisdiction over Coyne-Hoerle as any claims against her are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

III. <u>Motion to Dismiss</u>

At the outset, the Court notes that the Amended Complaint expressly states that Plaintiff's ADA claims are asserted pursuant to ADA Titles II and III.[2]  (Am. Compl. at 1.)  As ADA Title II addresses discrimination by "public entit[ies]," with a "public

---

[2] The Court notes that Plaintiff references ADA Title I in his opposition papers.  (Pl.'s Opp. Br. at 6.)  However, the Court declines to construe the Amended Complaint as asserting a Title I claim in light of Plaintiff's express assertion that his claims arise under Titles II and III.  (See Am. Compl. at 1.) Moreover, even if the Court were to construe Plaintiff's alleged failure to receive casting calls, (Am. Compl. ¶ 36), as a Title I employment discrimination claim, as set forth more fully below, Plaintiff alleges that Grant Wilfley, a non-party casting agency, was responsible for casting, not SAG or the individual defendants.  (See, e.g., Am. Compl. ¶ 10 ("[t]he casting agency know[n] as Grant Wilfley Casting, Inc . . . was responsible for my hiring of these jobs at that time.  They would assign me directly to the project, be it a TV show or feature film, and send me there").)

entity" defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority," see 42 U.S.C. §§ 12131(1), 12132, this provision is not applicable to the private Defendants in the case at bar. See Scaggs v. N.Y. Dep't of Educ., No. 06-CV-0799, 2007 WL 1456221, at *16 n.14 (E.D.N.Y. May 16, 2007) ("As Title II of the ADA applies only to public entities, Edison, as a private corporation, is not subject to liability pursuant to this statute."). Accordingly, Defendants' motion is GRANTED with respect to Plaintiff's ADA Title II claim. The Court will address whether Plaintiff has stated a Title III claim.

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). To that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). See also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. Jul. 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citation omitted). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Hiller, 2015 WL 4619624, at *7.

ADA Title III provides, in relevant part, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.

§ 12182(a).   The plaintiff states a Title III claim where he alleges: "(1) that [ ]he is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide."   Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008).

The Court construes the Amended Complaint as asserting a claim based on Plaintiff's failure to receive casting calls after he assisted disabled colleagues by "bypassing the casting agent." (Am. Compl. ¶ 36; see also Am. Compl. ¶¶ 15, 17 (alleging that SAG representatives present at worksites do not "take any steps to enforce nor include their disabled Actor population when a call or opportunity arises for a background artist 'non-descript' person"); Am. Compl. ¶ 25 (alleging that non-disabled actors are "consistently" cast to play disabled characters).)   However, the Court finds that Plaintiff has failed to plausibly plead a Title III claim.

First, a film or television production set is not a "public accommodation" pursuant to Title III.   The ADA defines "private entity" as "any entity other than a public entity." 42 U.S.C. § 12181(6).[3]   Additionally, a film or television

---

[3] As previously noted, the ADA defines "public entity" as, inter alia, a state or local government or an agency or

production set is not included in the list of private entities that are considered public accommodations under Title III.  See generally 42 U.S.C. § 12181(7).  While this list, which is "exhaustive, not merely exemplary or illustrative," Jankey v. Twentieth Century Fox Film Corp., 14 F. Supp. 2d 1174, 1178 (C.D. Cal. 1998), aff'd, 212 F.3d 1159 (9th Cir. 2000), includes "a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment," 42 U.S.C. § 12181(7), the Court declines to equate a production set with a "motion picture house" or "theater."  See Jankey, 14 F. Supp. 2d at 1181 (holding that "the Twentieth Century Fox film studio lot is NOT a place of 'public accommodation' covered by the ADA") (emphasis in original).[4]

Second, Plaintiff's allegations regarding his failure to receive casting calls do not indicate that he was denied the use of goods or services provided by SAG.  Cf. Krist v. Kolombos Rest. Inc., 688 F.3d 89, 97 (2d Cir. 2012) ("Title III is designed to prevent a facility offering public accommodation from denying

_____

instrumentality of a state or local government.  42 U.S.C. § 12131(1).

[4] The Jankey Court also considered whether specific facilities on the film studio lot--namely, the commissary, studio store, and an ATM--constituted public accommodations that would render the lot a "mixed use" facility and ultimately held that these facilities were not public accommodations.  Jankey, 14 F. Supp. 2d at 1180-84.

individuals with disabilities 'goods and services'") (quoting 42
U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii)); <u>Andersen v. N. Shore Long
Island Jewish Healthcare System's Zucker Hillside Hosp.</u>,
No. 12-CV-1049, 2013 WL 784391, at *10, (S.D.N.Y. Jan. 23, 2013),
<u>report and recommendation adopted as modified on other grounds</u>,
2013 WL 784344 (S.D.N.Y. Mar. 1, 2013) ("unless [defendants']
policies and procedures were applied in a discriminatory way, or
were used to deprive plaintiff of access to a program, benefit, or
service, plaintiff's ADA claim is insufficiently pled").
Moreover, the Amended Complaint states that Grant Wilfley, not
SAG, was responsible for casting, and after Plaintiff assisted his
disabled colleagues, Grant Wilfley ceased contacting him. (<u>See</u>
Am. Compl. ¶¶ 10, 36.) Plaintiff's vague assertion that on-site
SAG representatives failed to "enforce[e] [ ] the disabled actor
in the workplace setting for inclusion," (Am. Compl. ¶ 17), does
not suffice to state a Title III claim. Accordingly, Defendants'
motion to dismiss is GRANTED and Plaintiff's Title III claim is
DISMISSED.[5]

---

[5] Defendants also argue that they did not own, lease, or operate
any television and film production sites. (Defs.' Br. at 9.)
The Court need not determine this issue in light of its
dismissal of the Amended Complaint on other grounds.

IV.  Leave to Replead

        The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999), overruled on other grounds, Gonzaga v. Doe, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); see also FED. R. CIV. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).

        The Court declines to grant Plaintiff leave to replead the claims dismissed for lack of standing. Additionally, the Court finds that there is no indication from a liberal reading of the Amended Complaint that Plaintiff can state a valid Title II or Title III claim based on his failure to receive casting calls. Title II is not applicable to Defendants since they are private individuals or entities. As set forth more fully above, a television or film production set is not a "public accommodation" pursuant to Title III. Parenthetically, the Amended Complaint is totally silent as to Moore. Accordingly, leave to replead the Amended Complaint is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to strike (Docket Entry 21) is GRANTED and Plaintiff's Sur-Reply (Docket Entry 20) is STRICKEN. Additionally, Defendants' motion to dismiss (Docket Entry 17) is GRANTED. As set forth above, Plaintiff's claims dismissed for lack of standing are DISMISSED WITHOUT PREJUDICE and Plaintiff's remaining Title II and Title III claims are DISMISSED WITH PREJUDICE.

Given Plaintiff's pro se status, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiff and mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March   7  , 2017
          Central Islip, New York